**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **EMPIREMED, LLC,** | : | **CIVIL ACTION** |
| *Plaintiff*, | : | |
| | : | |
| **v.** | : | |
| | : | |
| **RACHEL GREENAN,** *et al.*, | : | **No. 25-cv-4893** |
| *Defendants*. | : | |

**MEMORANDUM**

**KENNEY, J.**                                                                                      **March 9, 2026**

The instant case arises out of an alleged violation of a non-compete agreement. Counterclaim Defendant, EmpireMED, LLC ("EmpireMed") and Third-Party Defendants Neel Jhaveri and Danielle Spencer now move for partial dismissal of Rachel Greenan's Amended Counterclaim and Third-Party Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 45. For the reasons set forth below, the Motion to Dismiss (ECF No. 45) will be **GRANTED** in part and **DENIED** in part.

## I.    BACKGROUND

Plaintiff EmpireMED initially filed a ten-count Complaint against Defendants Greenan and Precision Medical Products ("Precision") for violations of the Defend Trade Secrets Act, 18 U.S.C. § 1832, *et seq*.; the New Jersey Trade Secrets Act, N.J. STAT. ANN. § 56:15–1, *et seq*.; misappropriation of Plaintiff's proprietary information; breach of contract; breach of the duty of loyalty; tortious interference with prospective economic advantage; tortious interference with a contractual relationship; and unfair competition. ECF No. 1 ¶¶ 73–165.

Along with the Complaint, EmpireMED filed a Motion for a Temporary Restraining Order ("TRO") and Preliminary Injunction ("PI"). ECF No. 3. After a conference with the Parties, the Court granted EmpireMED's Motion for a TRO on September 2, 2025. ECF No. 15. Specifically,

the Court (1) temporarily enjoined Greenan from using or disclosing EmpireMED's trade secrets or confidential information and from soliciting, servicing, and/or selling to any EmpireMED customer; and (2) enjoined Precision from directly or indirectly soliciting EmpireMED customers who have been solicited or serviced by Greenan, soliciting EmpireMED customers as to whom Greenan provided EmpireMed's information to Precision, and from using or disclosing any of EmpireMed's trade secret or confidential information, to the extent such information was provided by Greenan directly or indirectly through a third party. *Id.* at 1–3.

On September 15, 2025, after a short period of discovery, the Parties reached an agreement resolving EmpireMED's Motion for a PI. ECF No. 27. The Parties agreed that Greenan would be enjoined until 11:59 P.M. on September 1, 2026, from directly or indirectly soliciting, servicing, and/or selling to any EmpireMED customer any bone stimulator product, including, but not limited to, Xstim. ECF No. 27 at 2. The Parties further agreed that Greenan would be enjoined until 11:59 P.M. on June 2, 2026, from directly or indirectly soliciting, servicing, and/or selling to *any* EmpireMed customers. *Id.*[1] Accordingly, the Court denied the Motion for a PI as moot. *Id.*[2]

On September 30, 2025, EmpireMED filed an Amended Complaint, asserting the same causes of action, but naming an additional Defendant, Alyssa Vera. ECF No. 28. On October 14, 2025, Greenan answered the Amended Complaint. ECF No. 30. Greenan denied the substance of EmpireMED's allegations contained in the Amended Complaint and asserted numerous affirmative defenses. *Id.* Greenan also asserted crossclaims against Precision and Vera for

---

[1] As relevant here, the Parties stipulated to the definition of "customers" to include the providers in New York and New Jersey who have purchased bone stimulator products from EmpireMed over the prior twelve (12) months. *Id.*

[2] Greenan also agreed to submit to the Court's jurisdiction, thereby abandoning her previous arguments that the Court lacked personal jurisdiction over her. *See* ECF No. 18-1 at 4,

contribution and indemnification, counterclaims against EmpireMED, and claims against third-party defendants Neel Jhaveri, Danielle Spencer, and John/Jane Does 1–10. *Id.* Greenan's Third-Party Claim and Counterclaim asserted claims for breach of contract, defamation/slander *per se*, intentional interference with prospective contractual relationship, and unjust enrichment. ECF No. 30 ¶¶ 51–85.

Counterclaim Defendant, EmpireMED, together with Third-Party Defendants Neel Jhaveri and Danielle Spencer moved for partial dismissal of Greenan's counterclaims for defamation /slander *per se*, tortious interference with a prospective contractual relationship, and unjust enrichment. ECF No. 35. In response to the Partial Motion to Dismiss, ECF No. 35, on December 2, 2025, Greenan Amended her Third-Party Complaint and Counterclaim asserting the same claims against EmpireMED, Neel Jhaveri, Danielle Spencer, and Jane/John Does 1–10. ECF No. 41. Accordingly, the Motion to Dismiss, ECF No. 35, was dismissed as moot. ECF No. 44. However, upon receipt of Greenan's Amended Third-Party Complaint and Counterclaim, Counterclaim Defendant, EmpireMED, and Third-Party Defendants Neel Jhaveri and Danielle Spencer (hereinafter, the "Counterclaim Defendants") renewed their Partial Motion to Dismiss. ECF No. 45. The matter has been fully briefed and has been considered on the basis of the submissions, without oral argument. *See* ECF Nos. 53, 58.

## II.    **DISCUSSION**

### A.  **Choice-of-Law**

All of Greenan's counterclaims sound in state law. As discussed below, the Parties dispute the applicable state law with regard to Counts II (defamation/slander *per se*) and III (intentional interference with prospective contractual relations). *Infra* Part II B–C. As the forum state, Pennsylvania's choice-of-law rules dictate which state law the Court must apply to resolve the Partial Motion to Dismiss with regard to each of Greenan's counterclaims. *See Klaxon Co. v.*

3

*Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Pennsylvania's choice-of-law rules require federal courts to engage in a three-step analysis. *See Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 230–31 (3d Cir. 2007) (citations omitted); *see also Dent v. Hyatt Hotels Corp.*, No. CV 24-6354, 2025 WL 293491, at *1 n.1 (E.D. Pa. July 11, 2025). The court must (1) determine whether an "actual or real conflict [exits] between the potentially applicable [state] laws[;]" if so, a court must next (2) analyze the underlying governmental policies for each state law in conflict and "classify the conflict as a 'true,' 'false,' or an 'unprovided-for situation[;]'" and (3) determine which state has the "greater interest in the application of its law." *Hammersmith*, 480 F.3d at 230–31 (citations omitted).

## B. Defamation/Slander *Per Se*

*First,* the Counterclaim Defendants have moved to dismiss Greenan's defamation/slander *per se* counterclaim (Count II) for failure to state a claim. ECF No. 45 at 17. Greenan's counterclaim for defamation/slander *per se*—referred to by the Court as a claim for defamation and defamation *per se* for consistency—is based on two sets of statements allegedly made by Jhaveri and Spencer to Greenan's former customers located in New York and New Jersey. *See* ECF No. 41 ¶¶ 42–44, 48, 67. Specifically, Greenan alleges that  Jhaveri made false and defamatory statements to Dr. Peretz of the New York Spine Institute between August 20, 2025 and August 25, 2025, that Greenan "was fired for violating her non-compete with EmpireMED and being sued by the Plaintiff[.]" *Id.* ¶¶ 42–43. Greenan alleges that on September 2, 2025, Jhaveri made statements to the Somers Orthopedic Surgery  & Sports Medicine Group's Carmel, New York office that Greenan "was engaged in illegal activity and was being sued by EmpireMED because of the allegedly illegal activity." *Id.* ¶ 44. Greenan alleges that Spencer made "similar statements . . . in Greenan's former territory in New Jersey during the same period." *Id.* at ¶ 48.

As an initial matter, the Parties dispute whether New York or New Jersey state common law applies to all or part of Greenan's defamation counterclaim. ECF No. 45 at 15–23; ECF No. 53 at 8–10; ECF No. 58 at 6–8. The Counterclaim Defendants argue that New York law governs Greenan's defamation counterclaim because the allegedly defamatory statements were made to customers in New York. *Id.* at 15 n.2. Greenan responds in opposition that while New York law governs the allegedly defamatory statements made in New York, New Jersey law governs the allegedly defamatory statement made in New Jersey. ECF No. 53 at 8.

A review of the Amended Counterclaim and Third-Party Complaint reveals that the Court need not wade into a choice-of-law analysis here. With respect to Greenan's allegations concerning Spencer's allegedly defamatory statements in New Jersey, plaintiff has plainly failed to meet the "facial plausibility" standard imposed on all federal pleadings. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) ("To prevent dismissal, all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible."). To be sure, Greenan's specific allegations concerning Spencer's purportedly defamatory statements in New Jersey are contained in a single paragraph. ECF No. 41 ¶ 48. Greenan does not allege with any particularity what Spencer allegedly said, or to whom. *See id.* Greenan alleges only that "similar statements" were made. *Id.* These allegations are insufficient to state a plausible counterclaim for defamation or defamation *per se*. *See Fowler*, 578 F.3d at 210. Greenan's remaining defamation allegations concern only statements purportedly made in New York. *See id.* ¶¶ 42–43.

The Parties agree that New York law governs the allegedly defamatory statements uttered in New York. *See* ECF No. 45 at 15 n.2; ECF No. 53 at 8. Thus, there is no conflict between the Parties regarding choice-of-law as to Greenan's defamation and defamation *per se* counterclaim. Accordingly, the Court will apply New York law. *See Zicherman v. Korean Air Lines Co., Ltd.*,

516 U.S. 217, 228–29 (1996) (noting that commentators agreed that domestic law applied to the issue presented and concluding that a choice-of-law analysis was unnecessary); *see also Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 61 (2d Cir. 2004) (concluding that where the parties' briefs assume a particular state law applies, "implied consent . . . is sufficient to establish choice of law" (citation omitted)); *Atlantic States Ins. Co. v. Copart, Inc.*, 609 F. Supp. 3d 379, 387 (E.D. Pa. 2022) ("[W]hen parties agree upon the law to be applied, a choice of law analysis is unnecessary." (citing *MacDonald v. Unisys Corp.*, 951 F. Supp. 2d 729, 737 (E.D. Pa. 2013)); *Dent*, 2025 WL 2934911, at *1 n.1.

In New York, plaintiffs asserting a defamation claim must plausibly allege that the defendant made: "(i) a defamatory statement of fact, (ii) that is false, (iii) published to a third party, (iv) of and concerning the plaintiff, (v) made with the applicable level of fault on the part of the speaker, (vi) either causing special harm or constituting slander per se, and (vii) not protected by privilege." *Sleepy's LLC v. Select Comfort Wholesale Corp.*, 909 F.3d 519, 528 (2d Cir. 2018) (citation and internal quotation marks omitted). As relevant here, New York law recognizes four categories of defamation *per se*, comprised of "statements that (1) 'imput[e] unchastity to a woman'; (2) assert that a plaintiff has a 'loathsome disease'; (3) tend to injure a plaintiff in his profession by reflecting on his ability to perform or properly conduct his business; and (4) charge a plaintiff with a serious crime." *Coleman v. Grand*, 158 F.4th 132, 138 (2d Cir. 2025) (alteration in original) (quoting *Liberman v. Gelstein*, 605 N.E.2d 344, 347 (N.Y. 1992)).

The Counterclaim Defendants argue that Greenan's defamation counterclaim must be dismissed because she fails to allege the actual words spoken by Jhaveri. ECF No. 45 at 17–18. The Counterclaim Defendants further argue that even if Greenan had identified the allegedly

6

defamatory statements, her counterclaim would nonetheless fail because the statements are substantially true, or are statements of opinion. *Id.* at 19–20.

Upon review, the portions of Jhaveri's allegedly defamatory statements that assert Greenan is being sued by EmpireMED are not actionable. There is no dispute that Greenan is being sued by EmpireMED for breach of contract. The statements are demonstrably true. Accordingly, statements by Jhaveri that Greenan is being sued by EmpireMED are insufficient to form the basis of a plausible counterclaim for defamation. *See Stega v. N.Y. Downtown Hosp.*, 107 N.E.3d 543, 553 (N.Y. 2018) ("Certainly, the falsity of an allegedly defamatory statement is an element of any defamation claim, but on a pre-answer motion to dismiss a defendant will prevail on this ground only if the statement's truth may be established from the complaint alone.").

Greenan has, however, plausibly alleged that Counterclaim Defendants defamed her when Jhaveri allegedly informed Dr. Peretz at the New York Spine Institute office that Greenan had violated her non-compete. ECF No. 41 ¶ 42. Greenan identifies with the requisite particularity what was said, to whom, and that she suffered reputational harm as a result. *Id.* As to the Counterclaim Defendants' argument that Jhaveri's statement is merely a statement of opinion, ECF No. 45 at 19–20, that argument is rejected. Greenan alleges that Jhaveri asserted as a factual matter that Greenan had violated her non-compete. *Id.* at ¶ 46. Greenan does not allege that Jhaveri offered speculation, or stated that he *believed* Greenan violated her non-compete. *See id.* The Court is satisfied that Greenan has plausibly alleged that Jhaveri asserted statements intended to convey assertions of fact as opposed to matters of opinion. *See Lento v. Altman*, No. CV 22-4840, 2024 WL 1154470, at *1 n.1 (D.N.J. Mar. 18, 2024), *aff'd*, No. 24-1899, 2025 WL 914306 (3d Cir. Mar. 26, 2025) ("At the motion to dismiss stage, the Court must limit its review to the face of the counterclaim." (quoting *Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 835 (3d Cir. 2011))).

Greenan has also plausibly alleged that Jhaveri's allegedly defamatory statement that Greenan violated her non-compete constitutes defamation *per se*. Both Greenan's allegations that Jhaveri accused her of acting "illegally," ECF No. 41 ¶ 44, and Greenan's allegations that Jhaveri stated that she violated her non-compete, *id.* ¶ 42, are sufficient to form the basis for plausible defamation *per se* claim. First, a generalized statement that Greenan acted "illegally" implicates whether she has committed a serious crime. *See Coleman*, 158 F.4th at 138 (quoting *Liberman*, 605 N.E.2d at 347). While the Court notes that violations of a non-compete would not satisfy the requirement that Jhaveri accused Greenan of a "serious crime[,]" *see id.*, at the pleadings stage, the Court is satisfied that Greenan's counterclaim is plausible because she alleges that Jhaveri *broadly* proclaimed Greenan had engaged in illegal activity. Next, Greenan's allegations that Jhaveri accused her of violating her non-compete are also actionable as defamation *per se. See id.* Such allegations may harm Greenan's profession because employers may not want to do business with her on the basis that she allegedly has a reputation for breaching her employment agreements.

Therefore, Greenan has plausibly alleged counterclaim for defamation and defamation *per se* against the Counterclaim Defendants on the basis that she was defamed when Jhaveri claimed to two separate doctors' offices in New York that she had violated her non-compete and acted "illegally." Accordingly, the Counterclaim Defendants' motion will be denied as to Count II.

### C. Intentional Interference with Prospective Contractual Relationships

Next, the Counterclaim Defendants have moved to dismiss Greenan's intentional interference with prospective contractual relationships counterclaim (Count III) for failure to state a claim. ECF No. 45 at 23–26. The Counterclaim Defendants argue that Greenan fails to identify the specific customers or third-party businesses that the Counterclaim Defendants allegedly interfered with. *Id.*

8

Greenan alleges that the Counterclaim Defendants intentionally interfered with her prospective contractual relationships when Jhaveri and Spencer made defamatory statements about Greenan to existing customers located in New York *and* New Jersey. ECF No. 41 ¶¶ 42, 44, 48, 80. Greenan alleges that Jhaveri and Spencer's "pattern of conduct intended to damage Greenan's existing business relationships and effectively poison the New York and New Jersey markets against Greenan, thereby undermining her ability to sell to those territories." *Id.* ¶¶ 42, 44, 48, 80.

As an initial matter, the Parties also dispute whether New York or New Jersey state law governs this counterclaim. *See* ECF No. 45 at 23–26; ECF No. 53 at 13–16; ECF No. 58 at 11–13. As discussed above, Pennsylvania's choice-of-law rules impose a three-part analysis. *Supra* Part II A. First, the Court must determine whether a conflict actually exists between New York or New Jersey state law. *See Hammersmith*, 480 F.3d at 230–31. Under New Jersey law, Greenan must plausibly allege that (1) she "had a reasonable expectation of economic advantage, (2) which was lost as a direct result of [the defendant's] malicious interference, and (3) that [she] suffered losses thereby." *Avaya Inc., RP v. Telecom Labs, Inc.*, 838 F.3d 354, 382 (3d Cir. 2016) (quoting *Ideal Dairy Farms, Inc. v. Farmland Dairy Farms, Inc.*, 659 A.2d 904, 932 (N.J. Super. Ct. App. Div. 1995)). As relevant here, "prospective relations" includes "the prospect of obtaining employment or employees . . . and any other relations leading to potentially profitable contracts." *Printing Mart-Morristown v. Sharp Elecs. Corp.*, 563 A.2d 31, 39 (N.J. 1989) (citation omitted). The term "malice" refers to "the intentional doing of a wrongful act without justification or excuse." *Avaya Inc., RP*, 838 F.3d at 383 (quoting *Printing Mart-Morristown*, 563 A.2d at 39). Conduct that is "fraudulent, dishonest, or otherwise contrary to the ethical standards of the industry" constitutes malice in this context. *Id.* at 386.

9

Whereas under New York law, to bring a claim for intentional interference with prospective contractual relations, the plaintiff must plausibly allege that "the defendant interfered with the plaintiff's business relationships either with the sole purpose of harming the plaintiff or by means that were unlawful or improper[.]" *Ackerson v. Restani Constr. Corp.*, 223 N.Y.S.3d 268, 271 (N.Y. App. Div. 2024) (quotations omitted). Ordinarily, "unlawful or improper" conduct refers to conduct that is itself "criminal or tortious[,]" as well as conduct solely intended to inflict intentional harm on the plaintiff. *Valley Lane Indus. Co. v. Victoria's Secret Direct Brand Mgmt., L.L.C.*, 455 F. App'x 102, 106 (2d Cir. 2012) (summary order) (quoting *Carvel Corp v. Noonan*, 818 N.E.2d 1100, 1103 (N.Y. 2004)).

Upon review, "no actual conflict" exists between New York and New Jersey law with respect to the first element of the claim under either state's common law. This is because both New York and New Jersey require that a plaintiff bringing a intentional interference with prospective contractual relations claim plausibly allege the existence of prospective business relations, or "economic advantage." *See Ackerson*, 223 N.Y.S.3d at 271; *see also Avaya Inc., RP*, 838 F.3d at 382.

On the merits, Greenan's counterclaim fails under either New York or New Jersey state law. *See uber v. Taylor,* 469 F.3d 67, 74 (3d Cir. 2006) ("If there is no conflict, then the district court sitting in diversity may refer interchangeably to the laws of the states whose laws potentially apply."). Greenan's intentional interference with prospective contractual relations claim, broadly construed, alleges that the Counterclaim Defendants engaged in malicious conduct when they made defamatory statements to existing EmpireMED customers—former customers of Greenan whom Greenan has agreed not to do business with.[3] *See* ECF No. 27 at 2. Greenan alleges the

---

[3] As discussed, Greenan has agreed that until 11:59 P.M. on September 2, 2026, she may not

same in her Amended Counterclaim and Third-Party Complaint. ECF No. 41 ¶¶ 49, 77. Taking Greenan's allegations as true, she has failed to plausibly allege the existence of any business relationships or reasonable expectation of prospective economic gain. The "customers" identified in Greenan's Amended Counterclaim and Third-Party Complaint are former EmpireMED customers with whom Greenan had an existing relationship prior to her termination. ECF No. 41 ¶¶ 42, 44, 48, 80. As Greenan herself alleges, she is prohibited—even if just in the interim—from conducting business with her former customers. *Id.* ¶ 49. Thus, the same customers cannot simultaneously constitute prospective business opportunities or economic advantage.

Further, both state common law causes of action require that the plaintiff plausibly allege causation. Here, even construing Greenan's Amended Counterclaim and Third-Party Complaint in the light most favorable to her, her intentional interference claim fails under either New York or New Jersey state law for the same reason: Greenan has agreed not to do business with the same customers she alleges the Counterclaim Defendants interfered with. *See Ackerson*, 223 N.Y.S.3d at 271; *see also Avaya Inc., RP*, 838 F.3d at 382.

For these reasons, Greenan has not plausibly alleged that the Counterclaim Defendants have caused her to suffer any damages. Therefore, Greenan has failed to state a counterclaim for intentional interference with prospective contractual relations. Accordingly, the Counterclaim Defendants' Motion to dismiss will be granted as to Count III, and the Court will dismiss Count III.

### D. Unjust Enrichment

---

directly or indirectly solicit, service, and/or sell any bone stimulator product, including, but not limited to, Xstim to EmpireMED's customers. *Id.* Greenan has also agreed that until 11:59 P.M. on June 2, 2026, she may not directly or indirectly solicit, service, and/or sell to *any* EmpireMed customers. *Id.* The Parties stipulated that the definition of "customers" includes the providers in *New York* and *New Jersey* who have purchased bone stimulator products from EmpireMed over the prior twelve (12) months. *Id.*

Finally, the Counterclaim Defendants have moved to dismiss Greenan's unjust enrichment counterclaim (Count IV) for failure to state a claim under applicable state law. ECF No. 45 at 26–28. Greenan alleges EmpireMED was unjustly enriched when it retained commissions that Greenan earned for sales she completed while employed by EmpireMED, in accordance with her employment agreement, prior to her termination. ECF No. 41 ¶¶ 87–94. According to Greenan, EmpireMED removed her access to her sales records upon her termination, and she is unable to contact prior customers to confirm the value of the sales she completed prior to her termination. *Id.* at ¶ 92.

Here, the Parties agree that New Jersey law governs Greenan's unjust enrichment counterclaim. ECF No. 45 at 26; ECF No. 53 at 10. As discussed, where the Parties agree as to the applicable law, the Court need not engage in a choice of law analysis. *See supra* p. 6. A plaintiff bringing an unjust enrichment claim under New Jersey law must plausibly allege that (1) "the opposing party received a benefit and that retention of that benefit without payment would be unjust[,]'" (2) she "expected remuneration from the defendant at the time it performed or conferred a benefit on defendant[,]" and (3) "the failure of remuneration enriched defendant beyond its contractual rights." *Thieme v. Aucoin-Thieme*, 151 A.3d 545, 557 (N.J. 2016) (internal quotation marks and citation omitted).

Turning to the merits of the Counterclaim Defendants' Motion to Dismiss Greenan's unjust enrichment counterclaim, the Counterclaim Defendants argue that Greenan's unjust enrichment counterclaim is barred by the existence of an express agreement that specifically covers the payment of commissions: her employment agreement. ECF No. 45 at 27. The Counterclaim Defendants direct the Court to Greenan's own allegation that she "was not compensated for these sales, as required by her employment agreement." *Id.* (quoting ECF No. 41-1 ¶ 90). The

Counterclaim Defendants further argue that Greenan otherwise fails to allege sufficient facts from which to determine *why* she believes she is entitled to additional compensation. *Id.*

As the Counterclaim Defendants correctly point out, the survival of an unjust enrichment claim depends on the lack of an enforceable agreement between the parties. *See Thieme*, 151 A.3d at 557; *see also Arnold Transp. Servs., Inc. v. Framaur Assocs., LLC*, No. CIV. A. 14-4280, 2015 WL 1117787,at *2 (D.N.J. Mar. 11, 2015) ("While unjust enrichment permits recovery under a quasi-contract theory of liability, this [] quasi-contract 'cannot exist where there is an enforceable agreement between the parties.'" (quoting *MK Strategies, LLC v. Ann Taylor Stores Corp.*, 567 F. Supp. 2d 729, 733–34 (D.N.J. 2008)). It follows, therefore, that plaintiffs may not recover on both a theory of breach of contract *and* unjust enrichment. *See Petri v. Drive N.J. Ins. Co.*, No. CV 21-20510, 2024 WL 160374, at *10 (D.N.J. Apr. 15, 2025) (citing *Mendez v. Avis Budget Grp., Inc.*, No. 11-537, 2012 WL 1224708, at *7 (D.N.J. Apr. 10, 2012)). At the pleadings stage, however, plaintiffs may allege multiple theories of liability—even if those theories are inconsistent. Where a plaintiff has pleaded alternative theories of breach of contract and unjust enrichment, "the Federal Rules of Civil Procedure permit such claims to be pleaded in the alternative where, as here, the existence or applicability of a contract is in dispute[.]" *Hickey v. Univ. of Pittsburgh*, 81 F.4th 301, 315–16 (3d Cir. 2023) (citing Fed. R. Civ. P. 8(d)(3)). The key issue, therefore, is whether or not the express agreement between EmpireMED and Greenan is actually disputed.

Upon review, the Court finds that the express agreement between EmpireMED and Greenan, her employment agreement, is not actually in dispute. Neither party disputes whether Greenan's employment agreement is enforceable. Rather, Greenan's breach of contract counterclaim seeks damages for EmpireMED's breach of the agreement. ECF No. 41 ¶¶ 54–65. Further, Greenan's own allegations foreclose her unjust enrichment claim. Greenan alleges that

"[u]nder the terms of her employment agreement with EmpireMED, EmpireMED obtained financial benefits from the sales Greenan completed prior to her termination on August 20, 2025." *Id.* ¶ 88. Greenan further alleges she was "not compensated for these sales, as required by her employment agreement." *Id.* ¶ 90.

Therefore, Greenan's unjust enrichment counterclaim is barred by the existence of an express agreement between herself and EmpireMED. Accordingly, the Counterclaim Defendants' Motion to Dismiss will be granted as to Count IV and the Court will dismiss Count IV.[4]

## III.   CONCLUSION

For the foregoing reasons, the Counterclaim Defendants' Motion to Dismiss (ECF No. 45) will be **GRANTED** in part and **DENIED** in part. Count II shall proceed to discovery. The Court will dismiss Counts III and IV. An appropriate Order will follow.

BY THE COURT:

/s/ Chad F. Kenney

**CHAD F. KENNEY, JUDGE**

---

[4] Greenan may seek leave to amend her Amended Counterclaim and Third-Party Complaint to re-plead a counterclaim for unjust enrichment, should the validity or enforceability of her employment agreement later become disputed.